UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

POPSOCKETS, LLC,

          Plaintiff,

    v.                             Case No. 17-cv-827-pp

CRAIG HUEFFNER, INDIVIDUALLY AND
d/b/a ABSOLUTE MARKETING,

          Defendants.

**ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM (DKT. NOS.
19, 21, 25); DENYING PLAINTIFF'S CIVIL LOCAL RULE 7(h) MOTION TO
STRIKE (DKT. NO. 20); CONSTRUING DEFENDANT'S MOTION TO VACATE
JUDGMENT AS A MOTION TO VACATE DEFAULT AND GRANTING MOTION
(DKT. NO. 23); ORDERING THE CLERK TO VACATE THE ENTRY OF
DEFAULT; GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION OF
MOTION FOR ENTRY OF DEFAULT JUDGMENT, BUT DECLINING TO
REVERSE THAT DECISION (DKT. NO. 30); AND GRANTING PLAINTIFF'S
MOTION TO STRIKE (DKT. NO. 36)**

      The plaintiff filed this case over fifteen months ago. It has spent a chunk

of that fifteen months trying to effect service on the nomadic defendant. The

plaintiff eventually managed to effect service, and the defendant has appeared.

This order disposes of all pending motions.

## I.    **BACKGROUND**

      This case began in June of 2017, when the plaintiff filed a complaint

alleging two counts of patent infringement under 35 U.S.C. §271 against

defendant Craig Hueffner, individually and through his business, Absolute

Marketing. Dkt. No. 1. The case immediately bogged down when the plaintiff

found it difficult to find the defendant, and thus to serve him. See dkt. no. 29 at 17-20 (transcript of June 20, 2018 hearing, laying out chronology of the plaintiff's attempts at effecting service).

After almost five months, the plaintiff—believing that it properly had served the defendant at least twice—asked the clerk of court to enter default. Dkt. No. 11. The clerk's office did so, and on November 17, 2017, the plaintiff filed a motion for default judgment. Dkt. No. 13. Only a few days later, on November 21, 2017, the court received the defendant's answer to the complaint, dkt. no. 18, along with a motion to dismiss the complaint, dkt. no. 19. This generated a spate of activity: (1) on November 29, 2017, the plaintiff filed a Rule 7(h) expedited non-dispositive motion to strike the defendant's answer and his motion to dismiss, dkt. no. 20; (2) on December 4, 2017, the defendant filed another motion to dismiss the complaint, dkt. no. 21; (3) on the same day, the defendant filed a motion to vacate judgment, dkt. no. 23; and (4) on January 22, 2017, the defendant filed motion to stay or motion to dismiss, dkt. no. 25.

On June 20, 2018, the court held a hearing to discuss the status of the case. Dkt. No. 28. The court chronicled the plaintiff's attempts at service, and heard telephonic testimony from the defendant about his whereabouts and about how he became aware of the case. Id.; see also dkt. no. 29.  The defendant informed the court that he did not live anywhere, testifying that he spent his time traveling from place to place and living in hotels. Dkt. No. 29 at 7. He admitted to listing 725 Sydney Drive, Racine, Wisconsin on his driver's

license; he said that his parents owned that property. Id. at 9. He initially

stated that he had learned of the case through "PACER[1] monitor," but later

explained that he had learned about it when he "Googled" his last name. Id. at

12. He testified that once he found out about the lawsuit, "at that point there

was nothing I could do about it because I didn't get any – receive anything. So I

was waiting to see what the situation was." Id. at 11.

After hearing this testimony, the court denied the plaintiff's motion for

default judgment because (1) it concluded that the only appropriate service on

the defendant had occurred through publication summons and that the

defendant had filed his answer by the deadline specified in that summons; and

(2) it was not convinced that it had personal jurisdiction over the defendant. Id.

The court gave the plaintiff two weeks to file a brief on the personal jurisdiction

question.

On July 13, 2018, the plaintiff filed its brief regarding personal

jurisdiction, and a motion asking the court to reconsider its denial of the

plaintiff's motion for default judgment. Dkt. Nos. 30, 31. The plaintiff made the

motion to reconsider under Federal Rule of Civil Procedure. 54(b), arguing that

the defendant's testimony at the June hearing constituted "newly discovered

evidence." Dkt. No. 30 at 1. It argued (1) that the court had general, personal

jurisdiction over the defendant because the defendant should be considered

"domiciled" in Wisconsin, dkt. no. 31 at 1-11; (2) that the court should

---

[1] PACER is an acronym for "Public Access to Court Electronic Records."
https://www.pacer.gov.

consider the defendant's "dwelling or usual place of abode" to be 725 Sydney Drive Racine, Wisconsin, id. at 16; and (3) that given this, the plaintiff's July 14, 2017 service on the defendant at that address meant that he had defaulted, by failing to answer by August 4, 2017, id. at 21-22.

Along with the motion and supporting brief, the plaintiff's counsel filed a supporting declaration and attached several exhibits. Dkt. Nos. 32, 32-1 through 32-12. In response, the defendant filed a "declaration," attesting to why he did not believe the court had personal jurisdiction over him. Dkt. No. 33. The plaintiff filed a reply. Dkt. No. 34. Well over a month later, the defendant filed a document he called a "response and declaration to plaintiffs memorandum date 7/13/18," dkt. no. 35, along with a forty-one page attachment, dkt. no. 35-1. The plaintiff asked the court to strike this "response and declaration," arguing that the court did not give the defendant leave to file it, and that although the defendant called it a "declaration," it wasn't signed. Id. at 1. The plaintiff also addressed the merits of the statements the defendant had made in the declaration.

## II.    JURISDICTION

"Federal courts are courts of limited jurisdiction." Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701 (1982). Article III, §2, cl. 1 of the United States Constitution mandates that federal courts may decide only those cases that arise under the United States Constitution or the laws of the United States ("federal question" jurisdiction, codified in 28 U.S.C. §1331), or to cases between citizens of different states ("diversity" jurisdiction,

4

codified in 28 U.S.C. §1332). This constitutional mandate that federal courts can decide only those cases that involve certain subjects is called "subject-matter jurisdiction." If a federal court does not have subject-matter jurisdiction, it cannot decide the case. Parties can't agree to give the court subject-matter jurisdiction if it does not have it. Id. at 702. A party can't waive subject-matter jurisdiction. Id.

There is also a requirement that federal courts have "personal jurisdiction" over the parties to the lawsuit. Even if the court has subject-matter jurisdiction (because the case arises under the Constitution or a federal law, or because the parties are "diverse"), it may not have "personal jurisdiction" over the parties.

> The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. Thus, the test for personal jurisdiction requires that "the maintenance of the suit . . . not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 . . . (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 . . . (1940)).

Id. at 702-703. For a federal court to have personal jurisdiction, the plaintiff must show that "[the] defendant must have purposefully established minimum contacts with the forum." Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 942-43 (7th Cir. 2000) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-46 (1985)). The question a court must answer in deciding whether it has personal jurisdiction over a defendant is "whether the defendant's conduct and connection with the forum

are such that it should reasonably anticipate being hailed into court there . . . ." Id. at 943.

A.    Subject-Matter Jurisdiction

The plaintiff alleges that the defendant infringed its patents in violation of 35 U.S.C. §271. Dkt. No. 1 at ¶5. That statute—35 U.S.C. §271—is a federal law. This court has subject-matter jurisdiction over the plaintiff's claim, then, because it involves a federal question, 28 U.S.C. §1331, and because district courts have original jurisdiction over patent claims, 28 U.S.C. §1338(a).

In his declaration about personal jurisdiction, the defendant stated that "[t]his lawsuit will not amount to over $75,000." Dkt. No. 33 at 1. He also stated that "diversity of citizenship applies here I believe." Id. The requirement that a lawsuit involve $75,000 or more is not relevant to *personal* jurisdiction. It relates to *subject-matter* jurisdiction. As the court noted, Article III of the Constitution gives federal courts jurisdiction over cases between citizens of different states—"diversity" jurisdiction. The law that codifies that requirement is 28 U.S.C. §1332. That law gives courts original diversity jurisdiction over cases between citizens of different states if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. §1332(a).

The defendant's belief that "diversity of citizenship applies here" is incorrect. If the plaintiff had sued the defendant on, say, a state contract claim, the only way this federal court could have decided the case would have been if the court had diversity subject-matter jurisdiction. The plaintiff then would

6

have had to show that the plaintiff and the defendant were citizens of different states, and it would have had to show that the amount in controversy exceeded $75,000. But the plaintiff has not sued the defendant on a state-court claim. It has sued under a *federal* statute. The law granting district courts federal question jurisdiction, 28 U.S.C. §1331, does not contain a requirement regarding the amount of the lawsuit; it says only that district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The plaintiff has sued the defendant under a law of the United States; this court has subject-matter jurisdiction.

B.     Personal Jurisdiction

At the June 20, 2018 hearing, the court asked the plaintiff to brief the question of whether the court had *personal* jurisdiction over the plaintiff.

To determine whether it has personal jurisdiction, a federal court looks to the law of the forum state in which it sits—in this case, Wisconsin—to determine the limits of its personal jurisdiction. Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 800 (7th Cir. 2014). Wisconsin's personal jurisdiction statute, Wis. Stat. §801.05, "has been interpreted to confer jurisdiction 'to the fullest extent allowed under the due process clause.'" Felland v. Clifton, 682 F.3d 665, 678 (7th Cir. 2012) (quoting Daniel J. Hartwig Assocs., Inc. v. Kanner, 913 F.2d 1213, 1217 (7th Cir. 1990)). "Once the requirements of due process are satisfied, then there is little need to conduct an independent analysis under the specific terms of the Wisconsin long-arm statute itself because the statute has been interpreted to

7

go to the length of due process." Id.  The court will begin by analyzing the constitutional requirements for personal jurisdiction under the due process clause.[2]

"The primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State." Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty., ___ U.S. ___, 137 S. Ct. 1773, 1779 (2017). The Supreme Court has discussed "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." Id. at 1780 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Specific personal jurisdiction "requires that the defendant's contacts with the forum state relate to the challenged conduct." Felland, 682 F.3d at 673. "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" Bristol-Myers, 137 S. Ct. at 1780 (quoting Goodyear, 564 at 919).

---

[2] The plaintiff asserts that a defendant may waive any challenge to personal jurisdiction by failing to raise it, citing e360 Insight v. The Spamhaus Project, 500 F.3d 594, 600 (7th Cir. 2007). Dkt. No. 31 at 1. The plaintiff asserts that the defendant has done just that—waived any objection to personal jurisdiction. Id. The court disagrees. The defendant stated in his motions to dismiss that that he does not live in Wisconsin. Dkt. Nos. 19 at 1, 21. He asserted the same in his motion to vacate judgment. Dkt. No. 23. Particularly given that the defendant is representing himself, these assertions are sufficient to constitute an objection that the court does not have personal jurisdiction over the defendant.

The defendant asserted in his declaration regarding personal jurisdiction that "[a]ny and all of [the plaintiff's] allegations did not occur in Wisconsin at all." Dkt. No. 33 at 1. This appears to be an argument that the court does not have specific personal jurisdiction over the defendant. But the plaintiff has not argued that this court has *specific* personal jurisdiction over the defendant, and has not alleged that the defendant sold any infringing products in Wisconsin. Rather, the plaintiff argues that the court has *general* personal jurisdiction.

The Supreme Court characterizes general jurisdiction as "all-purpose jurisdiction" that authorizes jurisdiction in a state where the defendant may be characterized as "at home." Goodyear, 564 U.S. at 919. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" Bristol-Myers, 137 S. Ct. at 1780 (quoting Goodyear, 564 U.S. at 919).

"The 'domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning.'" Kenosha Unified Sch. Dist. v. Stifel Nicolaus & Co. Inc., 607 F. Supp. 2d 967, 973 (E.D. Wis. 2009) (quoting Vlandis v. Kline, 412 U.S. 441, 454 (1973)). The law attaches significance to an individual's domicile, and construes a person's domicile—or "domicil"—as

> a relationship that is created by law between an individual and a particular locality or country. It is the place where a person has a settled connection for certain legal purposes, either because his home is there or because the locality is assigned to him by law. In short, domicil is the one technically preeminent place that, as a

result either of fact or fiction, every person is compelled to have in order that certain rights and duties may be determined.

39 Am. Jur. Proof of Facts 2d 587 (Originally published in 1984). In determining a specific individual's domicile, "[c]ourts rely on a variety of factors, including current residence, location of belongings and personal property, voter registration, driver's license and vehicle registrations, place of employment, presence of family members, and extent of social involvement in the surrounding community." Kenosha Unified, 607 F.Supp.2d at 974 (citing Sadat v. Mertes, 615 F.2d 1176, 1181 (7th Cir. 1980)).

At the June 20, 2018 hearing, the defendant and the court held the following exchange:

| The Court: | All right. Mr. Hueffner, you travel a lot it sounds like. I picked that up from reading all of the pleadings. And it also sounds like from your statements here today that you travel frequently. But you must have an address that you use. You must have a home base. What is that address? Where do you live? |
| --- | --- |
| Mr. Hueffner: | I do not live anywhere, Judge. I am a Gypsy. I live on the road in hotels, friends' houses, RVs. Wherever I have a fair, event trade show, that's where I stay. If I'm back in Wisconsin I will stay at my parents' house for a couple nights. Sometimes I will stay at my son's house. Or I will stay at my family cottage which is in La Crosse, Wisconsin. Other than that I'm on the road in hotels. |
| | I use my address—I use my address at 725 Sidney Drive for my driver's license. And I use the address in Clearwater, Florida for any business correspondence. |
| The Court: | What address do you use on your tax returns and tax documents? |

| | |
|---|---|
| Mr. Hueffner: | 725 Sidney Drive. |
| The Court: | How frequently do you come back to Wisconsin? |
| Mr. Hueffner: | Not that often. Sometimes I'm not there for three or four months. I don't see my son. I'll come back during the summer to go to my parents' cottage. I'll try to get back, you know, at least. |
| | During the wintertime I'm down in Florida for most of the time doing events. And then throughout the country I do events. And then during the summer I try to come up to Wisconsin for—to hang out with my son. And that's it. |
| The Court: | Are you paying a mortgage payment anywhere? |
| Mr. Hueffner: | I am not. I do not own any property. |

Dkt. No. 29 at 6-8.

The plaintiff argues that the court should find Wisconsin to be the defendant's domicile because the defendant "was domiciled in Wisconsin before he became itinerant and he has not established another domicile since[.]" Dkt. No. 31 at 5. In addition to the above, the plaintiff offers several pieces of evidence in support of this argument:

(a) A bankruptcy petition from 2009, in which the defendant checked a box representing that he had been domiciled or had a residence in the Eastern District of Wisconsin for 180 days immediately preceding the date of his petition, dkt. no. 32-2 at 3;

(b) Property tax records from 2008 for a home in Franklin, Wisconsin, dkt. no. 32-3;

(c) The defendant's statement that he had previously sent a letter to the plaintiff, which listed the 725 Sidney Drive Racine, Wisconsin as the defendant's address, dkt. no. 29 at 11;

(d) The fact that the defendant had listed his address as 725 Sydney Drive Racine, Wisconsin in 2016 in different litigation in the district of Nevada, dkt. no. 32-5;

(e) The defendant's statement that he receives some of his mail at 725 Sydney Drive, Racine, Wisconsin, dkt. no. 29 at 13;

(f) The fact that the defendant's business, "Absolute Marketing," has a post office box that is registered in Wisconsin, dkt. no. 32-6;

(g) The fact that the defendant registered "Absolute Marketing," as a fictitious name in Florida using a Wisconsin address, dkt. no. 32-7;

(h) The fact that the defendant received goods imported from China at a Wisconsin address, dkt. no. 32-8; and

(i) The fact that the defendant operates a second business, "Test Market 2017," that has a Wisconsin post office box, dkt. no. 32-10.

These facts show, and the defendant has not disputed, that the defendant *used to be* domiciled in Wisconsin. As late as 2009, the defendant admitted in a court document that he was domiciled or resided in Wisconsin. Dkt. No. 32-2 at 2. The property tax records showing taxes paid on a residence in Franklin, Wisconsin—at the same address that appears on the bankruptcy petition—support the assertion that the defendant was domiciled in Wisconsin. Dkt. No. 32-3.

"A domicil once established continues until it is superseded by a new domicil." Sadat, 615 F.2d at 1181 (citing Restatement (Second) of Conflict of Law § 19 (1971)).

Courts entertain a presumption in favor of an individual's old, established domicile. *See Texas v. Florida,* 306 U.S. 398, 427, 59 S.Ct. 563, 83 L.Ed. 817 (1939); *Lew v. Moss,* 797 F.2d 747, 751 (9th Cir.1986). A change in domicile requires "(a) physical presence at the new location with (b) an intention to remain there indefinitely." *Moss,* 797 F.2d at 750; *see also United States v. City of Highwood,* 712 F.Supp. 138, 142–43 (N.D.Ill.1989). When, as here, the party

12

claiming a new domicile is the opponent of federal jurisdiction, that party "bears the initial burden of producing sufficient evidence to rebut the presumption in favor of the established domicile."

Kenosha Unified, 607 F. Supp. 2d at 974. "Even 'a protracted absence from one's domicile does not establish a new domicile.'" Eliason v. Molgaard, No. 15-cv-833-wmc, 2016 WL 3248607, at *4 (W.D. Wis. June 10, 2016) (citing Gravdahl v. Conwell, No. 00-C-0579, 2002 WL 398599, at *2 (N.D. Ill. Mar. 14, 2002)).

The court finds that in the years since 2009, the record demonstrates that the defendant continues to regard Wisconsin as the place to which he returns. As recently as 2016, the defendant told the federal district court in Nevada that his address was 725 Sydney Drive, Racine Wisconsin. Dkt. No. 32-5. The defendant continues to use a Wisconsin address for his driver's license. Dkt. No. 29 at 7. The defendant told the court that he uses a Wisconsin address for filing tax documents. Id. The defendant admitted to writing a letter to the plaintiff using the 725 Sydney Drive, Racine, Wisconsin address. Id. at 11. The defendant told the court that he returns to Wisconsin in the summer to go to his family's cottage and to see his son. Id. at 12. While the defendant now claims that he does not "live in Wisconsin," dkt. no. 33 at 1, these actions belie that self-serving statement. And, in determining domicile, the Seventh Circuit has said that "'statements of intent are entitled to little weight when in conflict with the facts[.]'" Sadat, 615 F.2d at 1181 (quoting Garner v. Pearson, 374 F. Supp. 580, 589 (M.D. Fla. 1973)).

The defendant also said in his declaration regarding personal jurisdiction that he did not "have to have a domicile." Dkt. No. 33 at 1. He provides no legal authority for this contention; he can't, because "[i]t is a fundamental legal rule that every person has a domicil at all times." 25 Am. Jur.2d §2 (citing McDougald v. Jenson, 786 F.2d 1465, 1483 (11th Cir. 1986)). This makes sense; if evading a lawsuit were as easy as claiming that one didn't have a domicile, every defendant would make that claim.

The defendant attached to his declaration regarding personal jurisdiction a photocopy of his Social Security card (with the number redacted), dated January 18, 2018. Dkt. No. 33-1 at 1. Notably, while the defendant is an adult, the card is dated eight months ago, and only four days before he filed his motion to stay or dismiss. Next to the copy of the card is a copy of a mailing label addressed to the plaintiff in Clearwater, Florida. Id. There is no postmark or date, but the fragments of text above the mailing label intimate that it may have been on the envelope in which the Social Security Administration sent the plaintiff the card. Id. He also attached a photocopy of a 2017 IRS Form 1099-B form from "Continental Trade Exchange Ltd." in—interestingly—New Berlin, Wisconsin, addressed to him in Clearwater, Florida. Id. at 2. Finally, he attached a copy of what appears to be an envelope from the law firm of Godfrey & Kahn[3] in Milwaukee, postmarked January 25, 2018 and addressed to him in

---

[3]Godfrey & Kahn is counsel of record for the plaintiff. In a letter dated October 18, 2017, the plaintiff filed a demand with the court for a copy of the complaint, and listed his address as 4500 140th Avenue N., Suite 101, Clearwater, Florida 33762. Dkt. No. 10. From that date forward, the plaintiff's

Clearwater, Florida. Id. at 4. At the June 20, 2018 hearing, he stated that "during the wintertime I'm down in Florida for most of the time doing events." Dkt. No. 29 at 7.

This evidence does not show that the defendant is domiciled in Florida. It shows that he received three items of mail in Florida, most likely around January or early February 2018. But the defendant also testified that he receives some mail at the 725 Sydney Drive address in Wisconsin. The defendant testified that he spends the winter in Florida, but also testified that when he is "back in Wisconsin"—implying a return to a base—he stays with his parents, or with his son, or at the family cottage. Dkt. No. 29 at 7. He testified that he tries to "come back during the summer," and that he'll "try to get back." Id. Dkt. No. 29 at 7.

At any rate, the defendant has not argued that he is domiciled in Florida. He testified that he does not live "anywhere," that he is a "Gypsy," living on the road and in hotels and with friends. Id. He has tried to convince the court that this nomadic, itinerate lifestyle means that he does not have a domicile—

---

certificates of service for all the pleadings it served on the defendant listed the Clearwater, Florida address. See, e.g., dkt. no. 20-2 (certificate of service for plaintiff's Rule 7(h) motion to strike; dkt. no. 24-1 (certificate of service for response to motions to dismiss); dkt. no. 26-2 (certificate of service for response to motion to stay or dismiss). The fact that the plaintiff mailed pleadings to the defendant at the address the defendant put on his answer does not prove that he is not domiciled in Wisconsin. This is particularly true given that on October 24, 2017, the plaintiff tried to send the defendant a copy of the complaint, at that address, via Federal Express; the package was returned by FedEx with the notation, "Nobody at this add," and "WRG ADDR"— "wrong address." Dkt. No. 12-15.

apparently he believes this means that no one can sue him anywhere. That is not the case.

The court concludes that the plaintiff has met its burden of proving that the defendant's domicile is in Wisconsin, and that it has general personal jurisdiction over the defendant.

Given that, the answer to whether the court has personal jurisdiction under Wisconsin's long-arm statute is easy. Section §801.05(1)(b) of the Wisconsin Statutes allows for a court to exercise jurisdiction over a defendant who "is a natural person domiciled within this state" at the time the action is commenced. The defendant is a natural person, and the court has found that he is domiciled in Wisconsin, and was when the plaintiff filed suit in June 2017.

Having determined that it has subject-matter jurisdiction and personal jurisdiction, the court will turn to the substance of the parties' motions.

III.     **PLAINTIFF'S RULE 7(H) EXPEDITED NON-DISPOSITIVE MOTION TO STRIKE ANSWER AND MOTION TO DISMISS (DKT. NO. 20)**

On November 2, 2017, the plaintiff asked the clerk of court to enter default. Dkt. No. 11. The affidavit in support of the request listed the many attempts the plaintiff had made to serve the defendant—at an address in Racine, Wisconsin, on an employee of the defendant's, at the address on Sydney Drive, on counsel of record for the defendant in a separate case, via email, and by publication. Id. The attempts began in June 2017, and continued through the last publication on October 3, 2017. Id. In the declaration accompanying the request for default, plaintiff's counsel stated that the

deadline for the defendant to answer was October 24, 2017, which was twenty-one days after the last publication date of October 23, 2017. Dkt. No. 12 at 5. Based on this declaration, the clerk entered default, as required by Fed. R. Civ. P. 55(a).

Two weeks later, the plaintiff filed a motion for default judgment. Dkt. No. 13. The accompanying brief was concise—it reminded the court that entry of default required the court to deem the well-pleaded facts of the complaint regarding liability as true, dkt. no. 14 at 1, reiterated those facts, id. at 2-4, stated the basis for the court's jurisdiction, id. at 4, stated its entitlement to money damages, id. at 4-8, and requested specific relief, id. at 8. Four days later, the court received the defendant's answer (as well as his first motion to dismiss the lawsuit). Dkt. No. 18.

The plaintiff promptly filed an expedited, non-dispositive motion under Civil Local Rule 7(h), asking the court to strike the answer. Dkt. No. 20. The plaintiff recounted its efforts to contact the defendant before it filed the complaint, as well as its repeated efforts to serve him. Id. at 1. It asserted that it had properly served the defendant, and yet the defendant had not answered until after the clerk had entered default. Id. at 2. The plaintiff argued that the court should strike both the answer and the motion to dismiss, because the defendant had defaulted. Id. at 2. It argued that at that point in the litigation, if the defendant wanted to answer, he ought to be required to ask the court to vacate the entry of default (a request the plaintiff asserted the court should not grant). Id. at 20.

The court will deny this motion. As the court will explain in its discussion of the plaintiff's motion to reconsider, it finds good cause to vacate the entry of default against the defendant.

## IV.    DEFENDANT'S MOTION TO VACATE JUDGMENT (DKT. NO. 23)

The plaintiff filed the above motion to strike the answer on November 29, 2017. Five days later, on December 4, 2017, the court received from the defendant a document entitled "Motion to Vacate Judgment." Dkt. No. 23. In the motion, the defendant stated, "[the plaintiff] asserts I did not answer in time. I believe I did to the best of my ability." Id. He also stated, "I do not believe there is a judgment against me since I t [sic] was not signed by the clerk or judge but I wanted to file this as [the plaintiff's] lawyer suggested." Id.

While the defendant called his motion a motion to vacate "judgment," he was correct that the court had not entered judgment against him. The court had not yet ruled on the plaintiff's motion for default judgment, filed a little over two weeks earlier. What the defendant was trying to do was to ask the court to vacate the clerk's entry of default—just as counsel for the plaintiff had said he must do if he wanted the court to consider his answer. The court construes the motion as a motion to vacate the entry of default. The court will grant that motion, because it finds, as explained below, that although the plaintiff's service of the summons and complaint on the defendant's mother at 725 Sydney Drive, Racine, Wisconsin on July 14, 2017 was proper under Rule 4, there is good cause to set aside the default.

## V. PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S DENIAL OF ITS MOTION FOR DEFAULT JUDGMENT (DKT. NO. 30)

### A. Background

The defendant filed his answer on November 21, 2017, and the parties exchanged a flurry of pleadings during the following two months. The plaintiff waited patiently for almost four months after the defendant's *third* motion to dismiss was fully briefed, then politely requested a status conference. Dkt. No. 27. The court granted that motion.

At the June 20, 2018 status conference, the court told the parties that while there were several pending motions, it wanted to focus on the plaintiff's motion for default judgment. Dkt. No. 29 at 2. It explained that its resolution of that motion would "impact what happens with the remaining motions." Id. The court explained that it could not resolve any issues until it knew where the defendant lived. Id. at 5. It placed the defendant under oath, id., and questioned him extensively about where he was located at that moment, where he had been, and what his living situation was, id. at 5-9. The court also questioned the defendant about how he found out that the plaintiff had sued him. Id. at 9-11. The court gave counsel for the plaintiff an opportunity to question the defendant on the same issues. Id. at 11-14. The court also asked the defendant how he had learned about the June 20, 2018 hearing. Id. at 14-15.

After hearing the defendant's testimony, the court addressed the motion for default judgment. Id. at 15. The court found that while the plaintiff had served the defendant, the issue for the default judgment motion revolved

around *when* he'd been served. Id. at 16. The court walked through every step the plaintiff had taken to serve the defendant. Id. at 17-19. The court concluded that despite "Herculean efforts on the part of the plaintiff," none of the plaintiff's attempts to serve the defendant by mail or in person or with a registered agent complied with the requirements of Fed. R. Civ. P. 4. Id. at 19. In contrast, the court concluded that the plaintiff's service by publication complied with Rule 4 and it required the defendant to make a written demand with the district court for a copy of the complaint by October 24, 2017. Id. at 20.

The court recounted that it had received a written demand for the complaint from the defendant, dated October 23, 2017. Id. (referring to Dkt. No. 10). That demand (which, for the first time, provided the plaintiff with the Clearwater, Florida address) prompted the plaintiff to send a copy of the complaint to the defendant in Florida via FedEx. Id. The FedEx mailing was returned marked "wrong address." Id.

The clerk's office also mailed a copy of the complaint to the defendant at the Clearwater, Florida address; that mailing went out on October 23, 2017. Id. at 21. The court "assum[ed] for the sake of argument" that it would have taken "two or three days" for those documents to reach the defendant, and then calculated that he would have had twenty-one days to file his answer. Id. By the court's calculations, this would have "put [the defendant's] response date somewhere around between November 15th and November 17th . . . ." Id. The court conceded that it had not received the answer until November 21, but

noted that it didn't "have any way of knowing when [the defendant] did or didn't receive the complaint," id., and concluded that the court had received the defendant's answer "approximately about 21 days after we sent him a copy of the complaint," id. at 20-21. For that reason, the court denied the plaintiff's motion for default judgment. Id. at 21; Dkt. No. 28 at 4.

On July 13, 2018, the plaintiff filed a motion asking the court to reconsider that decision. Dkt. No. 30. The plaintiff argued that the information the defendant provided at the June 20, 2018 hearing constituted "newly-discovered evidence" justifying the court's reconsideration of its decision. Id. at 1. Specifically, the plaintiff argued that the defendant's testimony established that the plaintiff properly served the defendant under Fed. R. Civ. P. 4(e)(2)(B) by leaving a copy of the summons and complaint with the defendant's mother at the 725 Sydney Drive address in Racine, Wisconsin. Dkt. No. 31 at 15. And if it properly served the defendant on July 14, 2017, then the defendant's answer was due by August 4, 2017—over three and a half months before the court received it. Id. at 21-22. Thus, it argued, the defendant *had* defaulted, and the court should reconsider and grant the plaintiff's motion for default judgment. Id. at 22. The plaintiff added that the defendant had perjured himself during the June 20, 2018 hearing, and that this was another reason for the court to enter default judgment. Id. at 22-26.

B.    Standard for Reconsideration Under Rule 54(b)

The plaintiff asks the court to reconsider its June 20, 2018 decision denying default judgment under Fed. R. Civ. P. 54(b). That rule provides that

21

"any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action;" it allows the court to revise such orders "at any time before entry of a judgment adjudicating all of the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

The court's June 20, 2018 order denying the plaintiff's motion for default judgment did not adjudicate all of the claims or rights and liabilities in the case. That means that, under Rule 54(b), the court has the authority to revise the order if there is a basis to do so.

As this court noted in Anhert v. Employers Ins. Co. of Wausau, No. 10-cv-156-PP, 2018 WL 2048379 (E.D. Wis. May 2, 2018), federal district courts apply the standard of Fed. R. Civ. P. 59(e) to motions under Rule 54(b). Anhert, 2018 WL 2048379 at *3 (collecting cases). Under that standard, a party seeking reconsideration must clearly establish "'(1) that the court committed manifest error of law or fact, or (2) that newly discovered evidence precluded entry of [the order the movant asks the court to reconsider].'" Cincinnati Life Ins. v. Beyrer, 722 F.3d 939, 954 (7th Cir. 2013) (quoting Blue v. Hartford Life & Accident Ins. Co., 698 F.3d 587, 598 (7th Cir. 2012).

C.    Analysis

The plaintiff does not argue that the court committed a manifest error of law in denying its motion for default judgment. It seeks reconsideration under the "newly-discovered evidence" prong of the Rule 54(b) standard, asserting

that the defendant's testimony at the June 20, 2018 hearing was evidence that it did not have available when it moved for default judgment.

The court agrees that the defendant's June 20, 2018 testimony constitutes newly-discovered evidence under the Rule 54(b)/Rule 59(e) standard. "Newly discovered evidence" is evidence that was "not available at the time of" briefing. <u>Burritt v. Ditlefsen</u>, 807 F.3d 239, 253 (7th Cir. 2015) (in the context of a motion for a new trial). The court will grant the plaintiff's request to reconsider its ruling on default judgment in light of the defendant's June 20, 2018 testimony.

### 1. *Evidence Relating to 725 Sydney Drive in Racine*

In its declaration in support of its request for default, the plaintiff explained that in a 2016 federal case in the District of Nevada, in which the defendant had appeared on his own behalf, the defendant had told the court that his address was 725 Sydney Drive, Racine, Wisconsin. Dkt. No. 12 at ¶5. The plaintiff attached a docket report for the Nevada case, as well as a minute order dated August 25, 2016 which indicated that the defendant had given the Nevada court the 725 Sydney Drive address as his contact information. Dkt. No. 12-4 at 9. The plaintiff also attached a letter which purported to be from the defendant to someone named "Kim Bacon," dated May 8, 2017 and listing the defendant's address as 725 Sydney Drive in Racine. Dkt. No. 12-5. The plaintiff explained in the affidavit that *Karen* Bacon was an authorized reseller for the plaintiff, and that Ms. Bacon received the May 8, 2017 letter on June 22, 2017. Dkt. No. 12 at ¶6.

Based on this information, the plaintiff tried to serve the complaint in this case on the defendant at the 725 Sydney Drive address. Process server Michael Gunderson signed an affidavit explaining that on June 27, 2017, he went to 3214 West Plaza Drive in Franklin, Wisconsin. Dkt. No. 12-6 at 1. The current homeowner told Gunderson that the defendant *had* lived at that address, but that the current homeowner had purchased the residence in 2010. Id. Gunderson said that he then received from the plaintiff the 725 Sydney Drive address. So on July 7, 2017 at 12:34 p.m., he went to that address; the defendant's mother, Joan Hueffner, told him that the defendant was "not home." Id. Gunderson went back on July 12, 2017 at 8:13 a.m.; no one answered the door. He returned on July 13, 2017 at 5:10 p.m.; no one answered the door. Id. Finally, on July 14, 2017 at 3:17 p.m., Gunderson served the defendant's mother with the summons and complaint, and explained to her what they were. The defendant's mother told Gunderson that the defendant "was not home," but did not provide him with any information as to the defendant's whereabouts. Id.

At the June 20, 2018 hearing, the defendant told the court, "I use my address—I use my address at 725 Sidney Drive for my driver's license." Dkt. No. 29 at 7. He told the court that 725 Sydney Drive was the address he used on his tax returns and tax documents. Id. He testified that his parents—"who are 73 and 74 years old"—owned the Sydney Drive address, and reiterated that he used that address "only for [his] driver's license." Id. at 9. He denied having a post office box, and testified that "[t]he mail that I received is at my Sidney

24

Drive address." Id. He stated that if he was "back in Wisconsin," he would stay at his parents' house "for a couple of nights." Id. at 7.

The plaintiff's counsel asked the defendant whether he'd ever used the Sydney Drive address for business correspondence. Id. at 11. Initially, the defendant responded that he "tr[ied] not to use that address," id.; when counsel pointed out that that wasn't the question he'd asked, the defendant responded, "I don't know. I don't get anything sent there for my business, no," id. Counsel tried the question another way, asking whether the defendant had ever sent a letter to the defendant in which the defendant "used the 725 Sidney Drive address as the return address." Id. The defendant responded, "Yes, I did do that." Id. In response to another question from the plaintiff's counsel, the defendant said, "I get mail [at the 725 Sidney Drive address], but I'm never home to grab it. And nothing ever comes of importance. So I never really see it." Id. at 13. When counsel enquired whether the defendant would go to the address to retrieve anything that *was* of importance, the defendant replied, "I would have my mother or father send me a picture of what came through and then I would figure out what I need to do with that. But that's few and far between." Id. at 13-14.

2.    *The Basis for the Court's Conclusion that Service on the Plaintiff's Mother at Sydney Drive on July 14, 2017 Was Not Proper*

In its June 20, 2018 ruling denying the plaintiff's motion for default judgment, the court provided the following explanation for why it did not

believe that service on the defendant's mother at the Sydney Drive address was proper:

> The third place, understandably now based on what the conversation that we've just had, that the plaintiff tried with 725 Sidney Drive in Racine. And the plaintiff tried that address on a number of occasions—July 7th, July 12th, July 13th, and July 14th, all in 2017. That's an address that has been affiliated with [the defendant] in other litigation. And he's explained today some of his connection here as well.

> However, on one occasion, as [the defendant]'s kind of indicated, his mother was there. And the process server found her there, but she specifically told the process server that [the defendant] was not living there[4]. . . . He has just indicated under oath that that's his parents' house and that he'll stay with them sometimes when he visits, but that he wasn't living there.

> I don't think service in that case on this mother meets the qualification or the requirement under the rule that the complaint and summons be left at an individual's, quote, dwelling or usual place of abode.

Id. at 18-19.

### 3. *Requirements of Fed. R. Civ. P. 4(e)(2)(B)*

Federal Rule of Civil Procedure 4(e)(2)(B) provides that a plaintiff may effect service on a defendant by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]" The plaintiff asserts that on July 14, 2017, the process server left a copy of the summons and complaint with someone of suitable age and discretion who lived at the Sydney Drive

---

[4] The court's statement about what the defendant's mother told the process server was not entirely accurate. According to the process server's affidavit, the defendant's mother told him that the defendant "was not there," not that the defendant did not live there. Dkt. No. 12-6 at 1.

address. Dkt. No. 31 at 13. The defendant does not dispute this, and his testimony on June 20, 2018 supports the conclusion that his mother lives at the Sydney Drive address.

The plaintiff also asserts that the Sydney Drive address was the defendant's "dwelling or usual place of abode." Id. at 15. This, the defendant disputes. The defendant tried every way he could to argue that he did not live at Sydney Drive, but these arguments ring false in the face of so many other facts: his parents, with whom he is in contact, live there; he stays there (among other places) when he "comes back" to Wisconsin; he receives mail there (although nothing "important"); he lists the address on his driver's license; as recently as August 2016, he gave it to a federal court as his contact address; as recently as May 2017, he sent a letter to one of the plaintiff's own resellers, giving the address as his return address.

4.    *The Propriety of the July 14, 2017 Service on the Defendant's Mother*

The court finds the defendant's strenuous efforts to convince the court that he does not "live anywhere" disingenuous and self-serving. A party cannot make himself immune from suit by claiming that he does not live anywhere. There must be some geographic location to which the defendant is connected more permanently than he is to all others, and the record here indicates that the Sydney Drive address is that location. At least one court has looked at whether a defendant demonstrated any "intent to return" in deciding whether service at an address was proper. Kahn v. Kahn, 360 F. App'x 202, 204 (2d Cir. 2010) (service was not proper at address where defendant had demonstrated

27

no intent to return). All these connections between the defendant and the Sydney Drive address show an "intent to return" there, an intent to use Sydney Drive as a sort of home base.

The district court for the Southern District of New York came to the same conclusion in a case with similar facts. In <u>Jaffe and Asher v. Van Brunt</u>, the process server delivered the summons and complaint to the defendant's mother at 4 William Street in Riverside, Connecticut, the address where the defendant had asked the plaintiff law firm to bill him. <u>Jaffe and Asher v. Van Brunt</u>, 158 F.R.D. 278 (S.D.N.Y. 1994). When the defendant did not answer the complaint, the court entered default judgment. <u>Id.</u> at 279. In seeking to vacate that default judgment, the defendant argued that the William Street address was not his "usual place of abode"—he argued that it was his parents' residence, and that for the past four years, he had lived somewhere else. <u>Id.</u> The plaintiff responded that the defendant had a private phone line and fax machine at the address, a private bedroom that he used when he was in the New York area, received mail there, and kept clothing there. <u>Id.</u> The defendant argued that whenever he was at the William Street address, it was only to visit his parents, that the phone was a "mere convenience," that the only mail he received was "junk mail," and that the clothes consisted of socks and underwear. <u>Id.</u>

The court concluded that service at the William Street address was proper. <u>Id.</u> at 280. It began by noting,

> Our highly mobile and affluent society has relegated to
> history the days when an individual had but a single residence.
> Thus, as the Second Circuit has acknowledged, "it is unrealistic
> to interpret [Rule 4(e)] so that a person to be served has only one

28

dwelling house or usual place of abode at which process may be left.'" *National Development Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991). A strictly literal interpretation of the rule may thwart the purpose of Fed. R. Civ. P. 4(e)—to insure that service is reasonably calculated to provide a defendant with actual notice of the action. *Cf. Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 . . . (1950) (due process requires that "notice be reasonably calculated, under all circumstances," to provide parties with notice of pending action) . . . . Hence, for purposes of effecting service under Rule 4(e), an individual can have multiple "'dwelling houses or usual places of abode,' provided each contains sufficient indicia of permanence." *Nat'l Development*, 930 F.2d at 257.

Id. at 280.

The court found that even though the defendant was not living at the William Street address at the time of service, he had "sufficient indicia of permanence" there to "make plaintiff's service there reasonably calculated to provide [the defendant] with actual notice of the action." Id. The court also found it important that the defendant had "represented to [the plaintiff] and others" that William Street was his address. Id. It concluded that his "numerous representations that that location was his address estopp[ed] him from challenging service there." Id. (citations omitted).

Like the defendant in Jaffe and Asher, the defendant here has represented to the court in Nevada, and to the plaintiff itself, that Sydney Street was his address. And like the defendant in Jaffe and Asher, the defendant has "sufficient indicia of permanence" at Sydney Drive to make the plaintiff's July 14, 2017 service there reasonably calculated to provide him with notice of this lawsuit.

In fact, the July 14, 2017 service on the defendant's mother did just that—it put the defendant on notice that the plaintiff had sued him. The defendant's June 20, 2018 testimony shows that he knew about the process server's visits to his mother in July 2014. The defendant started by telling the court that he had seen the publication notice by monitoring PACER, the court's automated docket system. Dkt. No. 29 at 9-10. When the court tried to determine how the plaintiff had "somehow tripped across the fact that [he] had been sued on PACER at the time that the summons was published," the defendant responded that he had "Googled" his last name, and "it came up that it was on there . . . ." Id. at 10. He continued by explaining, "My mother told me that someone came to the house. So I said what was it for, blah, blah, blah. She says, 'I'm not sure.' So I wasn't in town so I looked it up." Id. at 11. Plaintiff's counsel followed up on this, asking the defendant, "what is your position on how you first learned of the lawsuit against you?" Id. at 12. The defendant responded, "My mother said someone came to the house. So I Googled it." Id.

There was back and forth between the plaintiff's counsel and the defendant about what comes up when one "Googles" one's name—the defendant said, "if you Google my name it comes up not just on PACER monitor or anything else. And there's lots of things that come up that say what courts or what lawsuits have been filed. And that's when I decided to look it up." Id. Counsel responded, "So it was not PACER monitor then." Id. The defendant replied, "It was like six or seven months ago. Or I don't even

remember how long ago it was. So I mean I Googled my name. My mom said someone came to the house, I Googled my name, a lot of stuff came up, and I think I looked up the PACER monitor to see what the situation was." Id.

The court finds that Sydney Drive is as close as it comes to the defendant's "dwelling or usual place of abode," concludes that service on his mother at that address on July 14, 2017 was reasonably calculated to give him notice of the lawsuit, and concludes that the plaintiff properly served him on July 14, 2017 when it served his mother with the summons and complaint. Given that, the deadline for the defendant to file his answer was August 4, 2017. The defendant did not answer by that date, and thus, it was appropriate for the clerk to enter default on November 3, 2017.

### 5.    *Standard for Setting Aside Default*

As the court noted above, the defendant has asked the court to vacate that entry of default. Federal Rule of Civil Procedure 55(c) allows the court to set aside an entry of default "for good cause." The Seventh Circuit has held that a party seeking to vacate an entry of default prior to the entry of final judgment must show "'(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint.'" Cracco v. Vitran Exp. Inc., 559 F.3d 625, 630-31 (7th Cir. 2009) (quoting Sun v. Bd. of Trs. of the Univ. of Ill., 473 F.3d 799, 810 (7th Cir. 2007)). The court held that the test should be applied "liberally" in the Rule 55(c) context, because of the "policy of favoring trial on the merits over default judgment." Id. (citing United States v. DiMucci, 879 F.2d 1488, 1495 (7th Cir. 1989); Sun, 473 F.3d at 811)).

### a.     Good Cause for the Default

The defendant's answer was due by August 4, 2017. The court did not receive that answer until late November of 2017—about three and a half months later. In support of his request that the court vacate the default, the defendant said that he believed that he had answered timely to the best of his ability, that he didn't live in Wisconsin so the plaintiff had no chance to serve him personally, and that he saw the service through publication and "did [his] best." Dkt. No. 23.

Based on the record evidence, the court has no way of knowing whether the defendant "did his best" to timely file his answer. At some point after July 14, 2017, the defendant learned from his mother that something was up. The record does not reveal when the defendant's mother told him that someone had come to the house. It does not reveal exactly what his mother told him about that visit. While the defendant testified that he "Googled" his last name because of talking to his mother, he did not say—he claimed he could not remember—when he did this. It is possible that the defendant talked to his mother, Googled his name and learned of the lawsuit on the very day of service. It is also possible, however, that he did not talk to his mother right away, and that even if he did, he did not Google his name right away, or drill down to whatever notified him of the lawsuit right away.

The plaintiff claims that when he Googled his name, it led to his discovery of the publication notice. The plaintiff published notice the authenticated publication summons on three dates: September 19, September

26 and October 3, 2017. Dkt. No. 12 at ¶15. The plaintiff did not say which of these notices he saw. He may have seen the September 19 notice; if so, he delayed over a month making a written demand for the complaint, because the date on his written demand is October 18, 2017. Dkt. No. 10. He may not have seen the notice until after its last publication on October 3, 2017; if that is the case, he made his written demand well within the twenty-one days specified in the publication notice.[5] Given the lack of information about when the defendant actually became aware that the plaintiff had sued him, the court cannot conclude that he did not have "good cause" for delaying three and a half months in answering.

The Rule 55(c) standard is a more lenient one, and the Seventh Circuit has held that "good cause" under that standard "does not necessarily require a good excuse for the defendant's lapse." JMB Mfg., Inc. v. Child Craft, LLC, 799 F.3d 780, 792 (7th Cir. 2015) (quoting Sims v. EGA Products, Inc., 475 F.3d 865, 868 (7th Cir. 2007)). Courts may consider whether declining to vacate default will result in the imposition of a default judgment that requires a defendant to pay damages disproportionate to the wrong done by the defendant and the harm caused to the plaintiff. Sims, 475 F.3d at 869. The defendant's behavior, though objectionable for reasons explained below, has not derailed this case to the point where a sanction of default judgment in the amount of approximately $150,000 (dkt. no. 13-1) would be proportionate to his conduct.

---

[5] See, e.g., Dkt. No. 12-10 at 1.

b.    Quick Action to Correct the Default

The court reaches a similar conclusion regarding the second requirement for setting aside default—the requirement that the defendant take quick action to correct it. As stated, the defendant's answer was three and a half months late. But there is some evidence in the record to support his claim that he found out about the lawsuit by the publication notice. On October 23, 2017, the court received a written demand from the defendant for a copy of the complaint. Dkt. No. 10. The only form of service that instructed the defendant to make a written demand for the complaint within twenty-one days was the publication notice. The first publication notice was published on September 19, 2017, the last on October 3, 2017. Accepting, under the lenient standard of Rule 55(c), that the plaintiff may have learned of the lawsuit through one of those notices, and that he may not have seen the notice until on or after October 3, 2017, the court cannot conclude that his October 18, 2017 demand for a copy of the complaint did not constitute "quick action."

c.    A Meritorious Defense to the Complaint

The Seventh Circuit has explained that the requirement that a defendant present "an arguably meritorious defense to the lawsuit" means "more than bare legal conclusions," but "less than a definitive showing that the defense will prevail." Parker v. Scheck Mech. Corp., 772 F.3d 502, 505 (7th Cir. 2014) (citations omitted). The defendant's various motions to dismiss are hyperbolic and argumentative, but they contain hints of a good faith defense. For example, he asserts that the plaintiff does not have a patent it claims to have, that he

34

did not sell infringing products, that he was not present at some of the events where the plaintiff alleges he sold infringing products. Dkt. No. 19 at 1. That is enough, under the lenient Rule 55 standard, to allow the court to vacate the entry of default.

### 6. *The Plaintiff's Arguments for Default Judgment*

While the court's ruling setting aside default relieves it of the necessity of considering whether the plaintiff has demonstrated that it is entitled to default judgment, failure to acknowledge the plaintiff's arguments might leave the impression that the court finds nothing questionable in the way events have unfolded. That is not the case.

The court already has stated that it finds the defendant's assertions that he doesn't live anywhere to be disingenuous and self-serving. Since October 23, 2017, when the court received the defendant's request for the complaint, the defendant has filed three motions to dismiss, alleging that the plaintiff's lawsuit constitutes "fraud," that the plaintiff is harassing him, and that the plaintiff's lawyer—an officer of the court—has lied. Dkt. No. 19 at 1, dkt. no. 21, dkt. no. 25. A defendant has a right to defend himself against a lawsuit; he does not have the right to make *ad hominem* attacks on the plaintiff or the plaintiff's counsel. The court does not tolerate such behavior from litigants. The defendant told the court in the October 18, 2017 request for the complaint to send the complaint to the Clearwater, Florida address. Yet when the plaintiff attempted to serve him there by FedEx the very next day, the FedEx envelope was returned with an indication that there was no one at that address. The

defendant's declaration regarding personal jurisdiction and the attachments give the disturbing impression that the defendant went so far as to order a copy of a Social Security card to be sent to him in Florida, just to convince the court that it did not have personal jurisdiction. The court sincerely hopes that the defendant had a valid reason, separate from this litigation, for ordering a Social Security card.

The court is not sanctioning the defendant by granting a default judgment against him. It will allow him to defend against the plaintiff's allegations on their merits. But if the defendant wants to present legitimate defenses to the plaintiff's claims, he must conduct himself honestly, and with civility—just like any other defendant. The majority of defendants believe that the lawsuits against them are unfair, or unjust. The majority are not pleased to have been sued, and want the lawsuit to go away. But the justice system requires parties to air their disputes in an orderly fashion, according to the rules, and with civility. Federal Rule of Civil Procedure 11(b) says that when a party signs a document and files it with the court, that party is certifying that the document is not being presented for any improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation), that the claims in the document are not frivolous, and that the factual contentions and denials are supported by evidence. The court can sanction a party who violates that rule. The defendant must abide by the requirements of the justice system, and by its rules.

7. *Conclusion*

While the court has granted the plaintiff's request to reconsider its denial of the plaintiff's motion for default judgment, it will not reverse its ruling denying the plaintiff's motion for default judgment, and will not vacate the entry of default.

## VI. DEFENDANT'S MOTIONS TO DISMISS (DKT. NOS. 19, 21, 25)

In the defendant's first motion to dismiss, he asserts that the case is a "fraud," and argues with facts in the complaint and in some of the plaintiff's other filings. Dkt. No. 19. In the second motion, he says that the court should dismiss the case because he does not live in Wisconsin and that the lawsuit is "frivolous." Dkt. No. 21. The third motion—a letter, really—says, "Here is a motion from another case that reiterates that [the plaintiff] has misrepresented this lawsuit and tried to intimidate." Dkt. No. 25. He asks the court to read the attachment, and says, "I would like for the same," and asks for either a "stay" or a "dismissal." Id. The defendant attached a letter from defense counsel to the judge in PopSockets LLC v. Quest USA Corp. and Isaac Srour, Case No. 17-cv-3653, pending in the Eastern District of New York. Dkt. No. 25-1. The letter asks that judge to stay the case pending the court's decision on a petition for "*inter partes* review."[6] Id. at 1. He also attached an order issued by a magistrate

---

[6] According to the United States Patent and Trademark Office, "inter partes review" "is a trial proceeding conducted at the [Patent Trial and Appeal] Board to review the patentability of one or more claims in a patent" on certain particular bases. https://www.uspto.gov/patents-application-process/appealing-patent-decisions/trials/inter-partes-review.

judge in <u>Think Products, Inc. v. Acco Brands Corp., *et al.*</u>, Case No. 14-6659, pending in the Eastern District of New York. <u>Id.</u> at 5. That order grants the defendants' motion for a stay pending completion of proceedings that were pending before the U.S. Patent and Trademark Office.

To the extent that these motions ask the court to dismiss the case for lack of personal jurisdiction, the court already has ruled that it has personal jurisdiction over the defendant.

To the extent that they seek to dismiss the plaintiff's complaint as frivolous or unfounded, the court will analyze them as motions to dismiss for failure to state a claim, under Fed. R. Civ. P. 12(b)(6).

"When analyzing the sufficiency of a complaint, we construe it in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." <u>Estate of Davis v. Wells Fargo Bank</u>, 633 F.3d 529, 533 (7th Cir. 2011) (citing <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1081 (7th Cir. 2008)). A plaintiff's claim will survive a motion to dismiss if "[it] alleged enough facts to render the claims facially plausible, not just conceivable." <u>Id.</u> (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Rule 12(b)(6) tests whether the complaint states a claim for relief, and a plaintiff may state a claim even though there is a defense to that claim." <u>Brownmark Films, LLC v. Comedy Partners</u>, 682 F.3d 687, 690 (7th Cir. 2012).

The defendant disagrees with the allegations in the complaint. That is his prerogative, but it is not a basis for the court to dismiss the lawsuit. In fact,

that is what trials are for—to allow a jury to decide whether the plaintiff's facts entitle it to relief, or whether the plaintiff has failed to prove its case. The court has reviewed the allegations in the complaint. The complaint contains sufficient factual allegations to plausibly state a claim for relief. There is no basis for the court to dismiss the complaint under Rule 12(b)(6).

To the extent that the defendant's third motion asks for a stay of the litigation, as opposed to dismissal, the court will deny that request. First, in the two cases the defendant attached to the motion, the defendants asked the courts to stay the main case because they were waiting for other rulings, either from the court itself or from the U.S. Trademark and Patent Office. The defendant has not pointed to any pending actions that would warrant a stay of the litigation in this case. Second, even a defendant who is representing himself must make his own arguments. He cannot simply dump documents from other cases (cases that involve different facts, and are in different procedural postures) in this court's lap, and say, "I would like the same thing." It is not this court's responsibility to dig through the record of a different case to figure out the point that the defendant wants to make. If the defendant wants to argue that his case is like another one, he needs to provide a written explanation as to *why* the court should adopt the reasoning from a different case in his case.

The court understands that the defendant is representing himself, and that federal court litigation—particularly patent litigation—is complex. But the

defendant's decision to represent himself does not excuse him from making his own arguments, and proving his own defense.

## VII. PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S AUGUST 22, 2018 RESPONSE (DKT. NO. 36).

On August 22, 2018, the defendant filed a one-page "declaration," dkt. no. 35, along with a forty-page decision from an administrative patent judge in a proceeding for *inter partes* review before the Patent Trial and Appeal Board, in a case involving the plaintiff and a different party, dkt. no. 35-1 at 2. The defendant says that he wants to submit this as a "response" to the plaintiff's motion for reconsideration, dated July 13, 2018 (dkt. no. 30). Dkt. No. 35. The plaintiff has moved to strike the motion and the attachment. Dkt. No. 36.

The court will grant the motion to strike for a couple of reasons. First, at the June 20, 2018 hearing, the court set a deadline of July 13, 2018 for the plaintiff to file its statement regarding personal jurisdiction. Dkt. No. 29 at p. 23, line 9. The court gave the defendant a deadline of August 3, 2018 to file his statement. Id. at p. 25, lines 22-23. The plaintiff filed its statement regarding personal jurisdiction and its motion for reconsideration on July 13, 2018. Dkt. Nos. 30, 31. In support of the motion, it filed a declaration from plaintiff's counsel and twelve attachments. Dkt. Nos. 32, 32-1 through 32-12. The court received the defendant's declaration regarding personal jurisdiction on August 2, 2018—the day before it was due. Dkt. No. 33. But the court did not receive the "response" with the attachment until August 22, 2018—forty days after the plaintiff filed its motion.

Rule 7 of this court's local rules governs the procedure for motion practice. (Parties can find the court's local rules at the Eastern District of Wisconsin's web site: www.wied.uscourts.gov.) It is a three-step process: the party seeking relief files a motion (Civil L.R. 7(a)); the non-moving party has twenty-one days to file a response (Civil L.R. 7(b)); and the moving party has fourteen days to file a reply (Civil L.R. 7(c)). The "response and declaration" the court received from the defendant on August 22, 2018 appears to be his Rule 7(b) response, but it is late by almost three weeks. If the defendant wanted to respond to everything in the plaintiff's July 13, 2018 motion and declaration, he should have done so by the deadline the court set—August 3, 2018.

Second, as the court already has explained, it is not appropriate for a party to ask for relief by attaching a lengthy order from a different court and saying, "Here—read this, and then do the same thing for me." The court is not going to dismiss this case based on the fact that the defendant attached a forty page decision resulting from a trial before the patent appeals board in a different case. The plaintiff's motion to strike addresses the merits of the defendant's assertion that the patent judge's decision resolves this case. Dkt. No. 36 at 2. These arguments relate to the substance of the claims in the complaint, and while there will come a time for both parties to argue that substance, now is not that time.

Third, most of the "response" is a rehash of the defendant's arguments that he does not live in Wisconsin. The defendant had multiple opportunities to make these arguments in his prior filings and at the June 20, 2018 hearing.

Finally, it appears that the defendant filed the response, and the attached decision, in an attempt to bully the plaintiff into dismissing the suit. The defendant claims that plaintiff's counsel said the plaintiff would "drop" this suit if the defendant "stopped selling the product." Dkt. No. 35 at 1. The defendant claims he refused because he believes that the plaintiff did not have a "legit patent." Id. He appears to believe that the decision he attached proves his belief justified, and says that he emailed "and asked if they [presumably the plaintiff] were going to inform the court;" he says he did not get a response, "so this is why Im sending this letter." Id. The defendant has asserted several times that the plaintiff is "harassing" him by filing this lawsuit, but in this instance, it is the defendant who is trying to use the litigation process to harass and bully the plaintiff into dismissing the case. This is the kind of behavior that the court will not tolerate.

The court will grant the motion to strike.

## VIII. NEXT STEPS

The next step in a federal lawsuit is for the court to hold a telephonic scheduling conference under Fed. R. Civ. P. 16. Both the plaintiff and the defendant must attend that conference. During that conference, the court will set a schedule for the parties to exchange discovery and to file motions. Civil Local Rule 16 lays out the issues that the parties should be prepared to discuss at a Rule 16 conference. Federal Rule of Civil Procedure 26(f) and Civil L. R. 26 require the parties to confer with each other before the Rule 16 scheduling conference, and to come up with a "discovery plan." This court

42

requires parties to file such a plan prior to the Rule 16 conference; parties may not be able to agree on their discovery plan, but the court expects parties to confer in good faith to try to reach agreement. The court will send out a separate notice of that hearing.

## IX. CONCLUSION

The court **DENIES** the defendant's motion to dismiss for lack of personal jurisdiction and failure to state a claim. Dkt. No. 19.

The court **DENIES** the plaintiff's Civil Local Rule 7(h) motion to strike the defendant's answer and to strike defendant's motion to dismiss. Dkt. No. 20.

The court **DENIES** the defendant's motion to dismiss for lack of personal jurisdiction and failure to state a claim. Dkt. No. 21.

The court **CONSTRUES** the defendant's motion to vacate judgment as a motion to vacate the entry of default, and **GRANTS** the defendant's motion to vacate default. Dkt. No. 23.

The court **ORDERS** the clerk of court to **VACATE** the November 3, 2017 entry of default.

The court **DENIES** the defendant's motion to dismiss for personal jurisdiction and failure to state a claim, and **DENIES** the defendant's motion to stay the litigation. Dkt. No. 25.

The court **GRANTS** the plaintiff's motion for reconsideration, but declines to reverse its ruling denying the plaintiff's motion for default judgment (dkt. no. 28). Dkt. No. 30.

The court **GRANTS** the plaintiff's motion to strike the defendant's August

22, 2018 response. Dkt. No. 36. The court **ORDERS** that the documents at dkt. nos. 35 and 35-1 are **STRICKEN** from the record.

Dated in Milwaukee, Wisconsin this 24th day of September, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**